IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. 3:25-cv-923

| | |
|---|---|
| MICHAEL H., individually and on behalf of E.H., and E.H., <br><br> Plaintiffs, <br><br> v. <br><br> BLUE CROSS BLUE SHIELD OF NORTH CAROLINA, AN INDEPENDENT LICENSEE OF THE BLUE CROSS AND BLUE SHIELD ASSOCIATION; TRUIST FINANCIAL CORPORATION; and THE BLUE OPTIONS PLAN, <br><br> Defendants. | **COMPLAINT** |

Plaintiffs Michael H., individually and on behalf of E.H., and E.H., by and through undersigned counsel, hereby complain against Defendants, alleging in the totality and alternatively as follows:

**INTRODUCTION**

E.H. received 15 weeks of medical treatment at Trails Carolina. While at Trails Carolina E.H. received neuropsychological testing from Mary M. Crowson, PhD. Defendants denied payment for any of the treatment or testing, requiring Plaintiffs to incur more than $77,000 in out-of-pocket expenses. Defendants initially denied the Trails Carolina claims on the grounds that Plaintiffs did not obtain prior authorization for this treatment. After Plaintiffs appealed, Defendants acknowledged that this basis for denial was not applicable, but then denied the claims on the grounds that the health plan does not cover an "outdoor wilderness camp" and that

E.H. did not qualify for residential treatment. Similarly, Defendants initially denied claims for services rendered by Dr. Crowson claiming that the health plan did not cover service for the primary diagnosis or service code listed by Dr. Crowson and that Plaintiffs' appeal for services provided by Dr. Crowson were untimely. Defendants later went back to denying the claims by asserting that the health plan does not cover testing related to attention deficit disorder and that Plaintiffs' out-of-network deductible had not been met. None of Defendants' denials contested the medical necessity or any clinical aspect of E.H.'s treatment or testing; rather, the grounds for denial were that the treatment was provided in residential setting and the testing included a diagnosis of attention deficit disorder. This litigation thus centers around the narrow issue of whether the grounds for the denials were valid.

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiffs are, and were at all times relevant hereto, residents of Nashville, Tennessee. Michael H. is E.H.'s parent.

2.      Truist Financial Corporation ("Truist Financial") is, and was at all times relevant hereto, Michael H.'s employer.

3.       As an employee of Truist Financial, Michael H. was and is a participant in Blue Options, the health benefit plan established by Truist Financial to provided health benefits for participants (the "Plan").

4.      E.H. is Michael H.'s dependent and was a minor at all times relevant hereto.

5.      As Michael H.'s dependent, E.H. was at all times relevant hereto, a beneficiary under the Plan.

6.      Truist Financial is the Plan Sponsor and the Plan Administrator.

2

7.      Based on information and belief, Plaintiffs allege that Truist Financial contracted with Blue Cross Blue Shield of North Carolina ("Blue Cross NC"), an Independent Licensee of the Blue Cross and Blue Shield Association, to handle the day-to-day administration of the Plan, including making benefit decisions, paying claims, and processing benefit claims and appeals.

8.       The Plan is a welfare benefits plan under 29 U.S.C. § 1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA").

9.      The Plan is self-insured by Truist Financial.

10.     Blue Cross NC determines and pays claims.

11.     Truist Financial and Blue Cross NC are fiduciaries of the Plan as defined by ERISA.

12.     This lawsuit is brought to obtain an order requiring Defendants to pay or reimburse expenses incurred during E.H.'s treatment at Trails Carolina and for testing and evaluation performed by Dr. Crowson.

13.     The remedies Plaintiffs seek under ERISA and the Plan are for benefits due under the terms of the Plan and pursuant to 29 U.S.C. § 1132(a)(1)(B); for appropriate equitable relief under 29 U.S.C. § 1132(a)(3) based on Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008 (the "MHPAEA"); an award of pre-judgment interest; and an award of fees and costs pursuant to 29 U.S.C. § 1132(g).

14.     This Court has jurisdiction over this case under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

15.     Venue is appropriate under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(c) based on ERISA's provisions regarding nationwide service of process and venue, the location of Defendants including the Plan, and Defendants doing substantial business in this district.

3

# FACTUAL ALLEGATIONS[1]

*Allegations regarding the Plan*

16.     Truist Financial/Blue Cross NC issued a booklet titled Benefit Booklet for Employees of Truist Financial Corporation for Blue Options (the "Benefit Booklet").

17.     Upon information and belief, Plaintiffs allege that the Benefit Booklet constitutes the official summary plan description for the Plan.

18.     Truist Financial contracted with Blue Cross NC to be its service representative to handle the day-to-day administration of the Plan and appointed Blue Cross NC as its agent to answer benefit questions, make benefit decisions, pay claims, and process benefit claims and appeals.

19.     In general, the Plan provides benefits for "COVERED SERVICES" that are "MEDICALLY NECESSARY" which is defined as:

> Those COVERED SERVICES or supplies that are:
> a) Provided for the diagnosis, treatment, cure, or relief of a health condition, illness, injury, or disease; and, except for clinical trials as described under the PLAN, not for EXPERIMENTAL, INVESTIGATIONAL, or COSMETIC purposes,
> b) Necessary for and appropriate to the diagnosis, treatment, cure, or relief of a health condition, illness, injury, disease, or its symptoms,
> c) Within generally accepted standards of medical care in the community, and
> d) Not solely for the convenience of the insured, the insured's family, or the PROVIDER.
>
> For medically necessary services, Blue Cross NC may compare the cost-effectiveness of alternative services, settings or supplies when determining which of the services or supplies will be covered and in what setting medically necessary services are eligible for coverage.[2]

---

[1] Unless otherwise noted, the information supporting these allegations is contained within the Administrative Record.  The Administrative Record is incorporated herein by reference.

[2] Benefit Booklet at 105.

4

20.     The Plan describes benefits it covers for mental health and substance use disorders as follows:

> The PLAN provides benefits for the treatment of MENTAL ILLNESS and substance use disorder by a HOSPITAL, RESIDENTIAL TREATMENT FACILITY, DOCTOR or OTHER PROVIDER without a referral, and includes, but is not limited to:
> - OFFICE VISIT services (see "Glossary" for additional information)
> - Outpatient services (includes partial-day/night hospitalization services (minimum of four hours per day and 20 hours per week), and intensive therapy services (less than four hours per day and minimum of nine hours per week))
> - Inpatient and RESIDENTIAL TREATMENT FACILITY services (includes room and board and related treatment).[3]

21.     While the Plan requires participants to obtain "PRIOR REVIEW and CERTIFICATION" for inpatient services, failure to do so "may result in allowed charges being reduced by $200."[4]

22.     The Plan defines "MENTAL ILLNESS" as follows:

> (1) When applied to an adult MEMBER, an illness which so lessens the capacity of the individual to use self-control, judgment, and discretion in the conduct of his/her affairs and social relations as to make it necessary or advisable for him/her to be under treatment, care, supervision, guidance, or control; and (2) when applied to a DEPENDENT CHILD, in accordance with North Carolina law, a mental condition, other than intellectual disability alone, that so impairs the DEPENDENT CHILD'S capacity to exercise age adequate self-control or judgment in the conduct of his/her activities and social relationships so that he/she is in need of treatment; and a mental disorder defined in the current edition of the Diagnostic and Statistical Manual of Mental Disorders of the American Psychiatric Association, Washington, DC ("DSM-V").[5]

23.     The Plan provides benefits for treatment provided at a "RESIDENTIAL TREATMENT FACILITY:"

---

[3] Benefit Booklet at 41.
[4] Benefit Booklet at 43.
[5] Benefit Booklet at 105.

5

A residential treatment facility is a facility that either: (1) offers treatment for patients that require close monitoring of their behavioral and clinical activities related to their chemical dependency or addiction to drugs or alcohol, or (2) offers treatment for patients that require psychiatric services for the diagnosis and treatment of MENTAL ILLNESS. All services performed must be within the scope of license or certification to be eligible for reimbursement.[6]

24.     The Plan's definition of a "DOCTOR" includes psychologists:

DOCTOR
Includes the following: . . . a doctor of psychology who must be licensed or certified in the state of practice and has a doctorate degree in psychology and at least two years clinical experience in a recognized health setting or has met the standards of the National Register of Health Service Providers in Psychology. All of the above must be duly licensed to practice by the state in which any service covered by the contract is performed, regularly charge and collect fees as a personal right, subject to any licensure or regulatory limitation as to location, manner or scope of practice. All services performed must be within the scope of license or certification to be eligible for reimbursement.[7]

25.     The Plan defines "OTHER PROVIDER" as:

An institution or entity other than a HOSPITAL, which is accredited and licensed or certified in the state where located to provide COVERED SERVICES, and which is acceptable to Blue Cross NC. All services performed must be within the scope of license or certification to be eligible for reimbursement.[8]

26.     The Plan allowed participants, including Plaintiffs, "the freedom to choose health care PROVIDERS who do not participate in the Blue Options network – the main difference will be the cost to you."[9]

27.     The Plan uses the term "OUT-OF-NETWORK" to mean a provider who is "[n]ot designated as participating in the Blue Options network, and not certified in advance by Blue Cross NC to be considered as IN-NETWORK. Payment for out-of-network COVERED

---

[6] Benefit Booklet at 109.
[7] Benefit Booklet at 100.
[8] Benefit Booklet at 106.
[9] Benefit Booklet at 15.

6

SERVICES is described in this benefit booklet as out-of-network benefits or out-of-network benefit levels."[10]

*Background of E.H.'s medical issues and treatment*

28. Prior to admission to Trails Carolina, E.H. was diagnosed with persistent depressive disorder; attention deficit hyperactive disorder, predominantly inattentive type; cannabis use disorder, mild; and parent-child relational problem under the criteria described in the DSM-5.

29. E.H. received treatment for these disorders at Trails Carolina from August 4, 2023 through November 21, 2023.

30. Trails Carolina was a 24/7 outdoor behavioral health treatment facility located in Lake Toxaway, North Carolina.

31. Trails Carolina offered residential therapy programs for adolescents dealing with mental health and addiction issues including cannabis addiction, attention-deficit/hyperactivity disorder, and depression.

32. Trails Carolina provided mental health and addiction treatment programs that are less intensive than acute hospitalization but more intensive than outpatient therapy, which qualified it as an intermediate or sub-acute behavioral health facility.

33. At all times relevant hereto, Trails Carolina was licensed by the State of North Carolina to provide outdoor youth therapy and operated in accordance with the governing North Carolina state regulations.

---

[10] Benefit Booklet at 107.

7

34.     E.H. benefitted from the intensive mental health treatment received at Trails Carolina and had improvements in each diagnosed condition from the services received at Trails Carolina.

35.     Trails Carolina charged $74,250.00 for the services it provided to E.H., which charges were submitted to Blue Cross NC.

36.     Blue Cross NC denied all of Trails Carolina's charges for the services it provided to E.H.

37.     In an Explanation of Benefits ("EOB") dated May 30, 2024, and another dated August 5, 2024, Blue Cross NC denied the claim for E.H.'s treatment at Trails Carolina with the explanation: "Service provided without authorization."

38.     Between September 13, 2023 and September 28, 2023, E.H. was seen by Mary M. Crowson, PhD, for a comprehensive neuropsychological evaluation to diagnose mental health issues and obtain recommendations for interventions and treatment.

39.     As a licensed doctor of psychology in North Carolina, Dr. Crowson was a "doctor" as defined by the Plan.

40.     Dr. Crowson's comprehensive neuropsychological evaluation of E.H. provided valuable assistance for diagnosing and treating E.H.'s mental health disorders and issues.

41.     Dr. Crowson charged $3,040.00 for the comprehensive neuropsychological evaluation of E.H., which charges were submitted to Blue Cross NC.

42.     Blue Cross NC denied all of the charges submitted by Dr. Crowson.

43.     In an EOB dated May 6, 2024, Blue Cross denied the claims submitted by Dr. Crowson with the explanation: "Claim denied. Service is not covered for either the primary

8

diagnosis or service code listed. May resubmit if other covered diagnosis or service codes apply."

44.    In a letter dated October 28, 2024, Michael H. requested a Level One Member Appeal review of Blue Cross NC's benefit denials of both the claims submitted by Trails Carolina and Dr. Crowson. Among other things, Michael H.:

    a.  Noted that the Plan specified that the penalty for failure to obtain preauthorization was not a complete reduction in benefits, but was instead a possible reduction in allowed charges by $200 (citing Benefit Booklet at 43);

    b.  Requested Blue Cross NC perform a retrospective review of Trails Carolina's claims and overturn the denial;

    c.  Pointed out that the CPT codes used to bill services provided by Dr. Crowson are all valid codes for psychiatric, psychological, and neuropsychological diagnostic testing and evaluation service;

    d.  Requested a physical copy of all documents under which the Plan was operated, and all documentation used for the initial determination and level one appeal determination, as well as the reviewer's name, credentials, and experience.

45.    In a letter dated November 22, 2024, Blue Cross NC reported that Plaintiffs' level one appeal request had been denied.

46.     In this letter, Blue Cross NC quoted the following Plan materials as the basis for its denial:

    According to your Benefit Booklet for Employees of Truist Financial Corporation for Blue Options sections titled "WHAT IS NOT COVERED?" states in the pertinent part, "…The PLAN does not cover services, supplies drugs or charges for… A benefit, drug, service or supply that is not specifically listed as covered in

9

this benefit booklet…R…Domiciliary care or rest cures, care provided and billed for by a hotel, health resort, convalescent home, rest home, nursing home or other extended care facility, home for the aged, infirmary, school infirmary, institution providing education in special environments, in RESIDENTIAL TREATMENT FACILTIES (except for mental health and substance use disorder treatment) or any similar facility or institution…"

Section titled "UTILIZATION MANAGEMENT" subsection titled "PRIOR REVIEW (Pre-Service)" states in pertinent part, "… If you go to any other PROVIDER outside of North Carolina or to an OUT-OF-NETWORK PROVIDER in North Carolina, you are responsible for ensuring that you or your PROVIDER requests PRIOR REVIEW by Blue Cross NC. Approval of a pre-service review for services to be provided by an OUT-OF-NETWORK PROVIDER does not guarantee payment of the OUT-OF-NETWORK PROVIDER'S billed charges. The PLAN pays the ALLOWED AMOUNT for COVERED SERVICES rendered by an OUT-OF-NETWORK PROVIDER. Failure to request PRIOR REVIEW and receive CERTIFICATION will result in a penalty…"

Section titled "Covered Services" section subtitled "HOSPITAL (Inpatient) and Other Facility Care states in pertinent part, "PRIOR REVIEW must be requested and CERTIFICATION must be obtained in advance from Blue Cross NC for inpatient admissions, except for maternity deliveries and EMERGENCIES… if PRIOR REVIEW is not requested and CERTIFICATION is not obtained for covered OUT-OF-NETWORK inpatient admissions, allowed charges will be reduced by $200, then deductible and coinsurance will be applied… PRIOR REIVEW must be requested and CERTIFICATION must be obtained in advance from Blue Cross NC or services will not be covered.

47.     The letter went on to explain why Blue Cross NC was upholding the denial of

Trails Carolina's claims on the basis of no prior authorization as follows:

Based on the information reviewed Blue Cross NC has determined to uphold the no prior authorization obtained denial for your behavioral health services on September 1, 2023 to November 16, 2023 provided by Trials Carolina LLC. Neither you nor your provider contacted Blue Cross NC prior to services being rendered to inquire if prior authorization was required and there were no extenuating circumstances presented. As outlined in your benefit booklet certain services require prior review or certification by the plan in order to receive benefits, if authorization is not obtained services will not be covered. Your claim processed correctly per your benefits and remains denied. For a list of services that may require prior authorization visit www.BlueCrossNC.com.

10

48. In the letter, Blue Cross NC also explained that it was not reviewing the claims submitted by Dr. Crowson on the grounds that they were untimely:

> In addition, you requested Blue Cross NC to review claims provided by Mary Crowson, PhD on dates September 13, 2023, September 14, 2023, September 21, 2023 and September 28, 2023. To be eligible for review, your request must be in writing and received within 180 days of the date of denial of your claims. The dates of services listed denied April 2, 2024 which is beyond timely for filing an appeal. Therefore, these claims were not reviewed.

49. On or about January 13, 2025, Michael H. submitted a level two member appeal review of the services provided by Trails Carolina and Dr. Crowson.

50. In the level two appeal, Michael H. reemphasized that ERISA provides him with certain rights throughout the internal appeals process and expressed his concern that Blue Cross NC was not meeting its obligations in several ways, including:

    a. Blue Cross NC's denial letter showed that Blue Cross NC failed to provide his case with a full review, as evidenced by its failure to include all dates of service in the denial letter;

    b. Blue Cross NC's denial letter failed to specifically respond to his prior request for a retrospective review; and

    c. Blue Cross NC falsely asserted that the claims from Dr. Crowson were submitted untimely because Blue Cross NC's EOB for Dr. Crowson's claims were dated May 6, 2024, not April 2, 2024, as Blue Cross NC represented in their denial letter.

51. Rather than acknowledging Plaintiffs' level two appeal, Blue Cross NC instead issued a letter dated February 4, 2025, that it identified as a "Notice of First Level Internal Adverse Benefit Determination Corrected Letter" (the "Corrected Letter").

11

52. In the Corrected Letter, Blue Cross NC acknowledged that "the denial for lack of prior authorization applied towards the outdoor wilderness behavioral health claims billed by Trails NC for services rendered from August 4, 2023, through November 21, 2023 was not applicable."

53. In the Corrected Letter, Blue Cross NC continued denying the claims submitted by Trails Carolina, but on different grounds: "The health plan does not cover residential treatment services provided in an outdoor or wilderness setting. Claims previously denied for lack of authorization have been adjusted to reflect the non-covered denial."

54. Blue Cross NC apparently abandoned its argument that the claims submitted by Dr. Crowson were untimely, as the Corrected Letter makes no mention of this argument.

55. Instead, in the Corrected Letter, Blue Cross NC came up with new grounds for denying the claims for services Dr. Crowson provided to E.H.:

> Additionally, Blue Cross NC has upheld the non-covered denial for neuropsychological testing evaluation services provided by Mary Crowson, PhD on September 14, 2023, September 21, 2023, and September 28, 2023. The health plan does not cover testing related to Attention Deficit Disorder. These claims were denied correctly according to the health plan benefits. There are no additional appeal rights related to these non-covered services.

> Lastly, Blue Cross NC has upheld the application of the out-of-network deductible for the psychological evaluation provided by Mark [sic] Crowson, PhD. At the time the services were rendered, the member's out-of-network deductible had not been met. The claim was processed correctly according to the health plan benefits.

56. On March 24, 2025, Michael H. submitted a second level two member appeal.

57. In the second level two appeal letter, Michael H. expressed his concern that after he disproved Blue Cross NC's initial rationale for denying the claims in his prior appeals, Blue Cross NC responded by changing the grounds for its denials to deprive him the opportunity to respond to Blue Cross NC's new grounds for denying the claims.

58.     In the second level two member appeal, Michael H. reported that he had reviewed the Plan's exclusions sections and was unable to find any exclusion for intermediate behavioral health treatment, and instead found that the Plan provides coverage for the treatment of behavioral health conditions by an "OTHER PROVIDER," and that Trails Carolina meets the definition of an OTHER PROVIDER.

59.     In the second level two appeal, Michael H. disputed Blue Cross NC's assertion that Dr. Crowson's testing services were not covered because the Plan "does not cover testing related to Attention Deficit Disorder" by pointing out that the purpose of Dr. Crowson's evaluation was to clarify E.H.'s co-occurring mental health conditions and diagnoses, to examine her functioning, and to generate recommendations for further treatment, none of which were excluded by the Plan.

56.     In the second level two appeal, Michael H. expressed concerns that Blue Cross NC was applying nonquantitative treatment limitations ("NQTL") that violated the MHPAEA in multiple ways, including:

    a.      By categorically excluding outdoor behavioral health programs (such as Trails Carolina) from coverage the Plan imposed an NQTL based on facility type or provider specialty.

    b.      The limited number of in-network providers available for behavioral health benefits compared to those available for intermediate medical care indicated a provider network NQTL.

    c.      The complete lack of intensive outpatient behavioral health providers may also indicate a NQTL based on facility type or provider specialty.

13

58. The second level two appeal requested that Blue Cross NC's review of the appeal include conducting a comparative parity analysis to determine whether or not the Plan is truly being administered in compliance with the MHPAEA, and to provide Plaintiffs with physical copies of any and all documents used, which Plaintiffs had a right to receive under MHPAEA, so that plaintiffs could independently conduct their own comparative parity analysis and appropriately plead their case.

60. Blue Cross NC responded to Plaintiffs' request for a second level appeal via letter dated August 15, 2025, denying Plaintiffs' appeal request.

61. The denial letter cited the following portions of the Benefit Booklet as the basis for its decision:

> According to your Benefit Booklet For Employees of Truist Financial Corporation for Blue Options BENEFIT PERIOD - January 1, 2023 through December 31, 2023 under section titled "WHAT IS NOT COVERED?", subsection "M", it states, in pertinent part, "...the PLAN does not cover the following services, supplies, drugs or charges...deemed not MEDICALLY NECESSARY..."
>
> Under the same section, subsection "R", it states, in pertinent part, "...The following residential care services:...Care in a self-care unit, apartment or similar facility operated by or connected with a HOSPITAL Domiciliary care or rest cures, care provided and billed for by a hotel, health resort, convalescent home, rest home, nursing home or other extended care facility, home for the aged, infirmary, school infirmary, institution providing education in special environments, in RESIDENTIAL TREATMENT FACILITIES (except for mental health and substance use disorder treatment) or any similar facility or institution..."

62. Blue Cross NC had not made any reference to Medical Necessity in any communications denying the claims by Trails Carolina or Dr. Crowson prior to the denial letter dated August 15, 2025, and even in the denial letter, Blue Cross NC does not explicitly assert that the treatment E.H. received at Trails Carolina was not medically necessary.

14

63.     Additionally, the language from the Benefits Booklet cited by Blue Cross NC in

its denial letter does not apply to the treatment E.H. received at Trails Carolina because the

exclusion does not specify that it applies to residential intermediate behavioral treatment

facilities and instead, this exclusion explicitly states that it does not apply to mental health and

substance use disorder treatment which is the type of treatment E.H. received at Trails Carolina.

64.     The denial letter continued with its explanation for denying the claims for

treatment provided by Trails Carolina as follows:

> The final determination is to deny benefits for the admission of outdoor
> wilderness camp services provided by Trails Carolina from August 4, 2023,
> through November 21, 2023, requested by Michael Hill on behalf of Eliana Hill
> who is being treated for Attention-deficit hyperactivity disorder, predominantly
> inattentive type.
>
> The denial is upheld. An outdoor wilderness camp is not an activity that would be
> covered for attention-deficit hyperactivity disorder (ADHD). The member is not a
> candidate for residential treatment level of care. The member has no suicidal or
> homicidal ideation and no aggressive behaviors. They also have no psychotic
> symptoms. The member can be safely treated at a lower level of care, such as
> outpatient treatment. The records do not support residential treatment level of
> care. As such, MCG Health Behavioral Health Care 28th Edition Residential
> Behavioral Health Level of Care, Child or Adolescent has not been met.
> Therefore, the request for the coverage of procedure code 1006
> Outdoor/Wilderness Behavioral Health for the diagnosis of F90.0 Attention-
> deficit hyperactivity disorder, predominantly inattentive type, is denied.

65.     The explanation Blue Cross NC gave for denying claims for services provided by

Trails Carolina focuses only on E.H.'s attention deficit disorder diagnosis without addressing

E.H.'s other diagnoses, including persistent depression disorder and cannabis abuse, both of

which are clearly covered by the Plan.

66.     The denial letter concluded its explanation for denying the claims for services

provided by Trails Carolina as follows:

> As outlined in your benefit booklet, residential treatment services received in
> institutions that provide education in specialized environments are excluded from

coverage. These services fall under a benefit exclusion in your health plan. Therefore, the request for coverage cannot be approved.

67.     However, Trails Carolina is an outdoor intermediate behavioral health facility that treats mental health and substance use disorders, not simply an institution that provides education in specialized environments as Blue Cross NC asserts.

68.     As set forth above, Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA.

69.     The denial by Defendants of benefits solely and directly caused Plaintiffs to incur $74,250.00 for E.H.'s treatment at Trails Carolina, and $3,040.00 for services provided by Dr. Crowson.

70.     After receiving the denial, litigation was Plaintiffs' only option to enforce their right to benefits owing under the Plan and seek reimbursement of expenses under the terms of the Plan (as written or as reformed or required by MHPAEA), and/or under the MHPAEA amendments to ERISA.

71.     Plaintiffs thereafter retained the undersigned to pursue their rights and remedies under ERISA.

72.     The remedies Plaintiffs seek herein are for the benefits due and pursuant to 29 U.S.C. § 1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. § 1132(a)(3) based on the Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008, pre-judgment interest, recoverable fees under 29 U.S.C. § 1132(g), and an award of costs and expenses under 29 U.S.C. § 1132(g) and other applicable law.

73.     Plaintiffs do not seek double recovery.

# FIRST CAUSE OF ACTION

## (Claim for Recovery of Benefits Under 29 U.S.C. § 1132(a)(1)(B))

74.    All allegations of this Complaint are incorporated here as though fully set forth herein.

75.    ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as Blue Cross NC, acting as agent of the Plan, to "discharge [its] duties in respect to claims processing solely in the interests of the participants and beneficiaries" of the Plan. 29 U.S.C. § 1104(a)(1).

76.    Blue Cross NC and the Plan wrongly excluded coverage for E.H.'s treatment in violation of the terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health disorders. As noted above, Blue Cross NC and the Plan have not challenged that E.H.'s treatment was medically necessary.

77.    ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with Plaintiffs in the pre-litigation appeal process.

78.    Blue Cross NC/the Plan's Denial Letters demonstrate the absence of a meaningful analysis of Plaintiffs' appeals. Among other things, Blue Cross NC/the Plan did not engage with or respond to the issues presented in the appeals and did not meaningfully address the arguments or concerns raised during the appeal process.

79.    Defendants breached their fiduciary duties to Plaintiffs when they failed to comply with their obligations under 29 U.S.C. § 1104 and 29 U.S.C. § 1133 to act solely in E.H.'s interest and for the exclusive purpose of providing benefits to ERISA participants and

17

beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of E.H.'s claims.

80. Defendants' actions in denying payment for E.H.'s treatment are a violation of the terms of the Plan, as written and/or as reformed as required or permitted under ERISA.

## SECOND CAUSE OF ACTION

### (Violation of the Mental Health Parity and Addiction Equity Act (29 U.S.C. § 1132(a)(3)))

81. All allegations of this Complaint are incorporated here as though fully set forth herein.

82. The MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and the MHPAEA. The obligation to comply with both ERISA and the MHPAEA is part of Defendants' fiduciary duties.

83. Generally speaking, the MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

84. The MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical/surgical benefits and makes illegal separate treatment limitations that are applicable only to mental health or substance use disorder benefits. 29 U.S.C. § 1185a(a)(3)(A)(ii).

85. Impermissible nonquantitative treatment limitations ("NQTLs") under the MHPAEA include, but are not limited to, restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. § 2590.712(c)(4)(ii).

18

86.     Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for E.H.'s treatment include subacute inpatient treatment settings such as skilled nursing facilities, inpatient rehabilitation facilities, etc.

87.     The Plan does not exclude coverage for medically necessary care of medical/surgical conditions based on geographic location, facility type, provider specialty, or other criteria in the manner claimed by Defendants for treatment for E.H. at Trails Carolina.

88.     Upon information and belief, Defendants' denial of coverage also violated the MHPAEA in application or effect. Because Blue Cross NC/the Plan declined to produce the requested documents and materials requested by Plaintiffs, further discovery is needed to resolve this aspect of Plaintiffs' claims.

89.     Defendants are in violation of 29 C.F.R. § 2590.712(c)(4)(i) because the terms of the Plan, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied to, the processes, strategies, standards, or other factors used to limit coverage for medical/surgical treatment in the same classification.

90.     Plaintiffs expressly requested Blue Cross NC to perform a MHPAEA analysis of the Plan. They expressed serious concern that Blue Cross NC was violating the statute and asked for a response using specific and direct examples. Blue Cross NC failed or declined to do this and failed or declined to even address the MHPAEA in its Denial Letters or EOBs.

91.     These MHPAEA violations by Defendants are breaches of fiduciary duty and give Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. § 1132(a)(3) including, but not limited to:

        (a)     A declaration that the actions of Defendants violate the MHPAEA;

(b)     An injunction ordering Defendants to cease violating the MHPAEA and requiring compliance with the statute;

(c)     An Order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by Defendants to interpret and apply the terms of the Plan to ensure compliance with the MHPAEA;

(d)     An Order requiring disgorgement of funds obtained or retained by Defendants as a result of their violations of the MHPAEA;

(e)     An Order requiring an accounting by Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of Defendants' violations of the MHPAEA;

(f)     An Order based on the equitable remedy of surcharge, unjust enrichment, estoppel, and/or other available equitable remedies requiring Defendants to provide payment to Plaintiffs as make-whole relief for their loss;

(g)     An Order equitably estopping Defendants from denying Plaintiffs' claims in violation of the MHPAEA; and

(h)     An Order providing restitution from Defendants to Plaintiffs for their loss arising out of Defendants' violations of the MHPAEA and unjust enrichment.

92.     In addition, Plaintiffs are entitled to an award of pre-judgment interest and attorney fees and costs pursuant to 29 U.S.C. § 1132(g).

WHEREFORE, Plaintiffs seek relief as follows:

1.     Judgment in the total amount owed for E.H.'s treatment at Trails Carolina and services provided by Mary M. Crowson, PhD;

2. Pre- and post-judgment interest to the date of payment;

3. Appropriate equitable relief under 29 U.S.C. § 1132(a)(3) as outlined under Plaintiffs' Second Cause of Action;

4. Recoverable fees and costs incurred pursuant to 29 U.S.C. § 1132(g); and

5. For such further relief as the Court deems just and proper.

Dated this 19th day of November, 2025.

/s/Norris A. Adams, II
NORRIS A. ADAMS. II
N.C. State Bar No. 32552
ESSEX RICHARDS, P.A.
1701 South Boulevard
Charlotte, North Carolina 28203
Telephone: (704) 377-4300
Facsimile: (704) 372-1357
NAdams@essexrichards.com

Karra J. Porter*
Utah State Bar No. 5223
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, Utah 84111
Telephone: (801) 323-5000
Facsimile: (801) 355-3472
Karra.Porter@chrisjen.com

*Attorneys for Plaintiffs*

*Subject to Admission Pro Hac Vice